1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SYMANTEC CORPORATION,

       Plaintiff,

  v.

ACRONIS, INC., ACRONIS INTERNATIONAL GMBH, and OOO ACRONIS,

       Defendants.

_____/

No. C 12-05331 SI

**ORDER GRANTING PLAINTIFF'S MOTION AND DENYING DEFENDANT'S CROSS-MOTION**

      Before the Court is plaintiff's motion for an order declaring service on defendant OOO Acronis effective and that personal jurisdiction exists over OOO Acronis.  ECF No. 38.  Also before the Court is defendant OOO Acronis's cross-motion to dismiss the complaint against it due to lack of personal jurisdiction under Rule 12(b)(2) or, in the alternative, insufficient service of process under Rule 12(b)(5).  ECF No. 49.  The motions are scheduled for hearing on February 8, 2013.  Pursuant to Civil Local Rule 7-1(b), the Court finds these matters appropriate for resolution without oral argument, and hereby VACATES the hearing.  Having carefully considered the papers submitted, and for good cause appearing, the Court hereby GRANTS plaintiff's motion and DENIES defendant's motion.

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BACKGROUND**

**I.    Procedural Background**

Plaintiff Symantec Corp. filed this patent infringement action on October 16, 2012.  Plaintiff alleged that defendants Acronis, Inc., Acronis International GmbH, and OOO Acronis infringed its patents for backup, recovery, and security software.  Complaint ¶ 4.  Acronis International GmbH (Acronis GmbH) is organized under the laws of Switzerland, and has appeared and filed an answer in this action.  *See* 11/26/12 Declaration of Goetz Eaton, ¶ 4; Answer, ECF Nos. 44, 56.  Acronis, Inc. is incorporated in Delaware, and likewise has appeared and filed an answer in this case.  11/26/12 Eaton Decl., ¶ 4; Answer, ECF No. 12.  OOO Acronis is organized under the laws of Russia and has a principal place of business in Moscow.  12/10/12 Declaration of Goetz Eaton, ¶ 3 [ECF No. 34-1].  OOO Acronis does not contest that it is the developer of the allegedly infringing software, but it is contesting personal jurisdiction and service in this case.

On December 7, 2012, Symantec sought entry of default against OOO Acronis, claiming that OOO Acronis had been properly served and failed to answer.  ECF No. 33.  OOO Acronis specifically appeared to object to entry of default and default was not entered.  ECF Nos. 34, 35.  On December 17, 2012, Symantec filed a motion seeking to establish that OOO Acronis had been properly served and that personal jurisdiction existed over OOO Acronis.  ECF No. 38.  OOO Acronis opposes that motion – arguing that service was not effectuated – and has cross-moved to dismiss based on lack of personal jurisdiction.

**II.    Factual Background**

Defendants Acronis, Inc., Acronis International GmbH (Acronis GmbH), and OOO Acronis are sister companies incorporated in different countries.  *See* Defendant OOO Acronis's Opposition ("Oppo.") at 3 [ECF No. 49];11/26/12 Eaton Decl., ¶ 4 [ECF No. 49-1, Ex. A].  With respect to jurisdiction, Plaintiff asserts – and OOO Acronis does not dispute – the following facts:

United States District Court
For the Northern District of California

1.   OOO Acronis is the entity that designs, develops and codes the accused products.[1]

2.   OOO Acronis maintains the Acronis website and is responsible for its content.[2]

3.   OOO Acronis offers the accused products for sale through its website, and some of the sales are specifically destined for California, because the website specifies that for "California state residents, applicable sales tax will be applied."[3]

4.   OOO Acronis solicits "U.S. affiliates" to sell the Acronis accused products in the United States.[4]

5.   OOO Acronis provides its customers – including ones in California – with post-sale technical support for Acronis's products.[5]

Defendant does not directly contest or respond to Symantec's evidence, but rather argues generally that Symantec's evidence does not support this Court's exercise of personal jurisdiction over OOO Acronis.  OOO Acronis's affirmative evidence in support of its position is scant.  OOO Acronis

---

[1]   For support, Symantec relies on the deposition testimony of  Goetz Eaton.  Eaton is the Acronis, Inc. "Worldwide Tax Director," who was designated as a Rule 30(b)(6) deponent for Acronis, Inc. and Acronis GmbH in an earlier case,  *Symantec Corp. v. Acronis, Inc., Acronis International GmbH*, No. 11-5310  and who submits the only declarations OOO Acronis relies on in support of its motion in this case.  In his deposition, Eaton testified that "Acronis Russia" is primarily responsible for research and development of the Acronis Backup & Recovery products.  Cassidy Decl., Ex. 3 at 114:10-14.  Symantec also relies on an Order issued in Case No.  11-5310*,* where Judge Corley noted that Symantec alleged and Acronis, Inc. and Acronis GmbH did not dispute that "Acronis Russia employees design, develop and write code" for infringing products.  Exhibit 1 at 4 to Supplemental Declaration of Kate E. Cassidy [ECF No. 57].

[2]   Symantec relies on the deposition testimony of Mr. Eaton, that "Russia" "maintains" the Acronis website, and that Russia is involved in "online marketing."  Cassidy Decl., Ex. 3 at 116:11 - 117:22.

[3]   Symantec relies on a printout from the Acronis website, maintained by "Acronis Russia," showing that Acronis products can be purchased through the website and California sales tax will be specifically included.  Cassidy Supp. Decl., Ex. 4.

[4]   Symantec relies on Acronis's website which solicits residents in the U.S. to become "web affiliates" to help promote U.S. sales, and notes that the program is "aimed at the US market, so all our promotional materials are in English."  Cassidy Decl., Ex. 13 at 2; *see also* Cassidy Decl., Ex. 14 (noting that the "affiliate program" is managed by Acronis employees in Russia).

[5]   Symantec relies on excerpts from help forums posted on the Acronis website that provide user support from Acronis employees based in Russia.  Cassidy Decl., Exs. 15, 16.  Symantec also relies on a document showing Acronis customers who received technical support from Russia, including a University of California entity.  Cassidy Decl., Ex. 9, Row 45.  Finally, Symantec relies on a software licensing contract between Acronis, Inc. and a California-based company which specifies that an OOO Acronis employee in Russia is the designated "Software Quality Assurance" point of contact.  Supp. Cassidy Decl., Ex. 2 ACR_SYM00473143.

asserts that each of the three entities sued in this case is a "separate and distinct" corporate entity and that OOO Acronis "has no offices or employees in the United States, does not do any business in the United States, and does not direct any advertising specifically toward California residents." 12/10/12 Eaton Decl., ¶ 3. Defendant also contends that defendant Acronis GmbH is the "entity that sells Acronis brand products in the United States." Oppo. at 3; *see also* 11/26/12 Eaton Decl., ¶ 4; Acronis GmbH Answer, ¶¶ 25, 32 [ECF No. 56]. OOO Acronis does not, however, explain what it means by not doing "any business" in the United States. Moreover, the only support for the assertion that Acronis GmbH is the entity which "sells" Acronis products in the United States, is GmbH's Answer where GmbH "admits it has sold certain Acronis Backup and Recovery and True Image products in the United States" and denies that "OOO Acronis offers to sell the [accused product] lines in the United States." Acronis GmbH Answer, ¶ 25, 32.

With respect to service, Symantec asserts that it has served OOO Acronis, consistent with the requirements of Federal Rule of Civil Procedure 4, by: (1) personally serving Alex Pinchev[6]; (2) personally serving Anthony Folger[7]; (3) personally serving Laurent Dedenis[8]; and (4) personally serving Ravi Jacob.[9] OOO Acronis does not contradict or attempt to clarify the deposition testimony relied upon by Symantec. Instead, Mr. Eaton asserts that Pinchev, Folger, Dedenis and Jacob are not employees, officers, or directors of OOO Acronis and are not authorized to accept service on behalf of OOO

---

[6] According to the deposition testimony of Goetz Eaton, employed by Acronis, Inc. and the Worldwide Tax Director, Pinchev is an employee of Acronis, Inc. but is also the CEO of "all of the Acronis" entities, or the "entire global" Acronis family. Cassidy Decl., Ex. 3 at 74:12 - 75:6. Mr. Eaton also agreed that Pinchev, as "CEO of the group, everyone operationally reports to him," throughout the "entire entities that are Acronis, including GmbH and Acronis, Inc." *Id.*, 78:10-19.

[7] According to Mr. Folger's deposition testimony, he is the CFO of Acronis, Inc. Cassidy Decl., Ex. 6 at 16-17. Folger testified that as CFO he was also responsible for finance at Acronis GmbH and "all" "other Acronis entities." *Id.*, at 18. Mr. Folger is, apparently, no longer employed by Acronis, Inc. but OOO Acronis does not dispute he was still employed as CFO of Acronis, Inc. at the time of service.

[8] According to the deposition testimony of Mr. Eaton, Dedenis is "president of worldwide sales," employed by Acronis, Inc. Cassidy Decl., Ex. 3 at 61. Eaton testified that employees of various Acronis entities in Europe reported to Dedenis. *Id.* at 62-64. Eaton agreed that Dedenis was president and "managerially" responsible for worldwide sales "globally for Acronis," but did not have a specific title at Acronis, Inc.

[9] Symantec asserts, but does not cite evidence, that Jacob is a member of an unidentified "board of directors responsible for Acronis." Symantec Motion at 5.

4

United States District Court
For the Northern District of California

1  Acronis.   12/10/12 Eaton Decl., ¶ 4.   As such, OOO Acronis argues that service has not been

2  effectuated.  Finally, OOO Acronis argues that to be effective, service must be pursued under the Hague

3  Convention, which Symantec has not done.

4

5                                              **LEGAL STANDARD**

6  **I.       Personal Jurisdiction**

7         A plaintiff bears the burden of establishing personal jurisdiction.  *See Steel Co. v. Citizens for*

8  *a Better Environment*, 523 U.S. 83, 104  (1998) ("[T]he party invoking federal jurisdiction bears the

9  burden of establishing its existence."); *Pieczenik v. Dyax Corp.*, 265 F.3d 1329, 1334 (Fed. Cir. 2001)

10 ("[T]he plaintiffs bore the burden of proving by a preponderance of the evidence the facts necessary to

11 establish personal jurisdiction over the defendant.").  In patent cases, Federal Circuit law applies to

12 determinations of personal jurisdiction.  *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148

13 F.3d 1355, 1358 (Fed. Cir. 1998).  To establish personal jurisdiction, "the court must determine whether

14 an applicable statute potentially confers jurisdiction by authorizing service of process on the defendant,

15 and whether the exercise of jurisdiction would satisfy the requirements of due process."  *Deprenyl*

16 *Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1349 (Fed. Cir. 2002).  In

17 this case, the "applicable statute" authorizing service of process is the California long arm statute.  *See*

18 *id.* at 1350; Fed. R. Civ. P. 4(e).  Because the California long arm statute is coextensive with the limits

19 of due process, the "the two inquiries collapse into a single inquiry: whether jurisdiction comports with

20 due process."  *See Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc.*, 142 F.3d 1266, 1270 (Fed. Cir.

21 1998).

22        Jurisdiction comports with due process when a defendant has "certain minimum contacts with

23 [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play

24 and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  A defendant may

25 meet the minimum contacts requirement in one of two ways.  First, a court may exercise "general

26 jurisdiction" over a defendant that has "continuous and systematic" contacts with the forum state.  *See*

27 *LSI Indus. Inc. v.. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000).  Second, a court may

28 exercise "specific jurisdiction" where the defendant's contacts with the forum state are "isolated and

sporadic" but the cause of action arises out of those contacts. *Id.* The Federal Circuit's test of specific jurisdiction asks "(1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether the assertion of personal jurisdiction is reasonable and fair." *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010).[10] The third factor should only be applied sparingly. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). Unless plaintiff's factual allegations are "directly controverted," they "are taken as true for purposes of determining jurisdiction." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568 (Fed. Cir. 1994). Without discovery on jurisdiction, the court must resolve all factual disputes in the plaintiff's favor. *Deprenyl Animal Health, Inc.*, 297 F.3d at 1347.

## II.    Service of Process

Rule 12(b)(5) of the Federal Rules of Civil Procedure authorizes a defendant to move for dismissal due to insufficient service of process. *See* Fed. R. Civ. P. 12(b)(5). When a defendant challenges service, the plaintiff bears the burden of establishing the validity of service as governed by Rule 4. *See Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). This Court has long held that "[d]ismissals for defects in the form of summons are generally disfavored. Such defects are considered 'technical' and hence are not a ground for dismissal unless the defendant demonstrates actual prejudice." *U.S.A. Nutrasource, Inc. v. CNA Ins. Co.*, 140 F. Supp. 2d 1049, 1052-53 (N.D. Cal. 2001) (quoting *Chan v. Society Expeditions, Inc.*, 39 F.3d 1398, 1404 (9th Cir.1994); *see also United Food & Commercial Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir.1984) ("Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint.").

---

[10] The Federal Circuit held that its test of personal jurisdiction remains the same after the Supreme Court's decision in *McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011). *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1363 (Fed. Cir. 2012) ("Because we must proceed on the premise that *McIntyre* did not change the Supreme Court's jurisdictional framework, we must apply our precedent that interprets the Supreme Court's existing stream-of-commerce precedents.").

**DISCUSSION**

**I.      Personal Jurisdiction**

   **A.      Purposefully Directed Activities**

   Symantec's evidence of purposeful direction centers primarily on the fact that OOO Acronis "maintains" the Acronis website and that the website facilitates sales in California.  Symantec also argues that purposeful direction – and OOO Acronis's knowledge that the accused products are being sold and used in California – has been demonstrated by evidence that OOO Acronis employees provide technical assistance with the accused products to customers based in California.  As noted above, OOO Acronis does not dispute, explain or provide context to the evidence Symantec offers.  Instead, OOO Acronis relies on the Eaton declaration which states – in its totality – that OOO Acronis does "not do any business in the United States, and does not direct any advertising specifically toward California residents."  Oppo. at 7; 12/10/12 Eaton Decl., ¶ 3.  OOO Acronis also relies on a citation to Acronis GmbH's answer, which as noted above admits GmbH sells some accused products in the United States and denies that OOO Acronis sells Acronis brand products in the United States.  However, Acronis GmbH's partial admission to sales and denial about OOO Acronis, without more, is not "evidence" that can contradict the implications of the evidence relied on by Symantec.  Acronis also argues that simply because it might "maintain" the website, Symantec's argument fails because Symantec has failed to show that OOO Acronis is responsible for the contents on the website. Defendant Reply at 2.  However, once Symantec presented evidence that OOO Acronis maintains the website, and raised an inference that OOO Acronis is responsible for that website including the contents, OOO Acronis should have brought forth *evidence* to show why Symantec's evidence-based inference could not be supported.  OOO Acronis failed to do so.[11]

   The Court finds that although Symantec's evidence of OOO Acronis facilitating sales in California through the website is sparse, it stands essentially unrebutted by OOO Acronis and is sufficient to demonstrate purposeful direction.  *See, e.g.*, *Stomp, Inc. v. Neato*, 61 F. Supp. 2d 1074,

───────────────

   [11]  At most, OOO Acronis points to information on the Acronis website that payment processing and order fulfillment are handled by a U.S. company, cleverbridge.  OOO Acronis Reply at 2 (citing Supp. Cassidy Decl., Ex. 4 at 2).  However, the use of a third-party payment processor and fulfiller does not rebut the inference that OOO Acronis is facilitating sales to California through the website it maintains.

1078 (C.D. Cal. 1999) ("By advertising and offering its products for sale via the Internet, NeatO has placed its products into the stream of commerce intending that they would be purchased by consumers with access to the Web, including California."); *see also Vishay Dale Elecs., Inc. v. Cyntec Co.*, 2008 U.S. Dist. LEXIS 16289 (D. Neb. Jan. 29, 2008) (personal jurisdiction in parent infringement action over defendant who sold products to a distributor (who then solicited business in forum state) and where defendant advertised its products through its website).[12]

Finally, the Court notes that OOO Acronis does not dispute Symantec's evidence regarding Russian employees providing technical services to California-based consumers.  This is additional evidence that Symantec has knowledge of where the product it develops is being sold and used and, therefore, that Acronis is purposefully directing activities to California. *See, e.g.*, *Monolithic Power Sys. v. Silergy Corp.*, 2011 U.S. Dist. LEXIS 66096 (C.D. Cal. June 20, 2011) (personal jurisdiction over foreign corporation existed in patent infringement action where manufacturer distributed the accused component in large quantities to sub-manufacturers, knew how and in what products its components would be used and evidence demonstrated defendant "could reasonably foresee that its component parts would end up in California."); *Vishay Dale Elecs., Inc. v. Cyntec Co.*, 2008 U.S. Dist. LEXIS 16289, *8 (D. Neb. Jan. 29, 2008) ("If the sale of a product of a manufacturer or distributor is not an isolated occurrence but arises from a defendant's efforts to serve, directly or indirectly, the market for its product, it is not unreasonable to subject it to suit.").

### B.        Whether the Claims Arise Out of or Relate to Those Activities

Acronis argues that Symantec has failed to establish that its claims against OOO Acronis relate to the alleged, but disputed, California-targeted activities.  In its complaint, Symantec asserts that OOO Acronis has not only committed direct acts of patent infringement, but has also contributed to and induced others to commit acts of patent infringement.  Complaint, ¶¶ 9, 33.  Such contribution includes,

---

[12] The failure of OOO Acronis to address Symantec's evidence that Russian-based employees solicit United States-based entities to help sell its products through the "affiliate" program which is "aimed at the US market" is also significant, because this evidence appears to contradict Eaton's assertion that OOO Acronis does not "do any business" in the United States.  While not determinative – since no evidence has been presented that any California-based entities are affiliates -- that evidence raises questions about the accuracy of the Eaton declaration.

for example, inducing infringement by providing instructions, users guides and technical support to users. *Id.* Given the evidence discussed above, the Court finds that even if OOO Acronis did not directly sell the infringing product in California, the evidence supports the assertion that OOO Acronis acted in concert with Acronis GmbH to directly or indirectly serve the California market. *See, e.g.*, *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994) ("defendants, acting in consort, placed the accused fan in the stream of commerce, they knew the likely destination of the products, and their conduct and connections with the forum state were such that they should reasonably have anticipated being brought into court there.").

Moreover, even if it were shown that OOO Acronis has not facilitated sales through the Acronis website, it has been shown – and not rebutted – that Acronis has provided technical support to induce infringement. Acronis argues that technical support through user forums on its website cannot support the inducement claim because that support occurs only *after* a customer has bought and used the allegedly infringing software. Acronis, however, fails to address that in at least one instance, a contract for sale of the products to a California-based company by Acronis, Inc. specifically included providing a Russia-based employee as designated technical support. *See* Supp. Cassidy Decl., Ex. 2 ACR_SYM00473143.

### C.      Whether Personal Jurisdiction is Reasonable and Fair

Defendant contends that it would be unfair to require it to defend itself in this Court because of the severe inconvenience of the distant forum and because it does not sell products or maintain distribution channels into California. The Court disagrees. As the Court found, OOO Acronis maintains a website on which it or its sister companies sell to customers in the United States and California, OOO Acronis runs an affiliate program that is directed at the U.S. market, and OOO Acronis provides technical support – based both on software licensing contracts and users seeking support through the website – to California entities. In light of the evidence before the Court, it cannot be said that OOO Acronis could not have expected to be drawn into Court in California to defend a patent infringement claim on products it designs and develops. *See, e.g.*, *Nuance Communs., Inc. v. Abbyy Software House*, 626 F.3d 1222, 1234 (Fed. Cir. 2010).

The Court also notes that OOO Acronis has not suggested an alternative forum in which resolving the parties' dispute would be more fair to OOO Acronis, and the fact that another case between Symantec and Acronis, Inc./Acronis GmbH is already being litigating in this district demonstrates plaintiff's significant interest in having this case proceed against all three defendants in this district. Finally, the fact that Acronis, Inc. and Acronis GmbH are currently litigating in this forum, appear have some overlap among their knowledgeable employees with OOO Acronis,[13] and share the same counsel with OOO Acronis, diminishes the burden on OOO Acronis.  *See, e.g.*,  *Nuance Communs., Inc.,* 626 F.3d at 1234 (where foreign defendant contesting jurisdiction and domestic defendant "share the same counsel and operate under a consolidated Global Management Team," these "relationships should ameliorate any possible burden of litigating in California.").

## II.    Service of Process

As noted above, plaintiff argues that it has effectuated service, by means of personal service on Alex Pinchev, Anthony Folger, Laurent Dedenis, and Ravi Jacob.  In support, Symantec attached deposition testimony from Goetz Eaton and Anthony Folger indicating that while Pinchev, Folger and Dedenis were employees of Acronis, Inc., they performed managerial functions as CEO, CFO, or president for Acronis companies "globally."  OOO Acronis does not address or attempt to clarify the deposition testimony regarding the roles Pinchev, Folger or Dedenis played for Acronis companies "globally."  OOO Acronis does not indicate whether functionally or operationally, Pinchev, Folger, or Dedenis played any role for OOO Acronis or whether any OOO Acronis employees reported to any of these individuals.  Instead, OOO Acronis simply states – through the Declaration of Goetz Eaton, whose deposition testimony is relied on by Symantec – that these individual are not "employees, officers or directors of OOO Acronis."  12/10/12 Eaton Declaration.

---

[13] For example, Goetz Eaton, employed by Acronis, Inc. as the "Worldwide Tax Director," has submitted declarations based on personal knowledge regarding OOO Acronis, as well as Acronis GmbH and Acronis, Inc.

1    Federal Rule of Civil Procedure 4(h)(1)(B) states that summons may be served on a corporation,

2  in a U.S. judicial district,

3    by delivering a copy of the summons and of the complaint to an officer, a managing or
     general agent, or any other agent authorized by appointment or law to receive service of
4    process and — if the agent is one authorized by statute and the statute so requires — by
     also mailing a copy of each to the defendant . . . .

5

6  "Despite the language of the Rule, service of process is not limited solely to officially designated

   officers, managing agents, or agents appointed by law for the receipt of process."  *Direct Mail*
7
   *Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 695, 688 (9th Cir. 1988).  Rule 4 "should
8
   be liberally construed so long as a party receives sufficient notice of the compliant."  *Id.*  Service can
9
   be made to any representative "so integrated with the organization that he will know what to do with
10
   the papers."  *Id.*
11
       Based on the deposition testimony provided by Symantec, it appears that at least two of the
12
   individuals served – Alex Pinchev and Anthony Folger – played wide-ranging operational and financial
13
   roles for Acronis companies "globally" as the CEO and CFO.  In his Declaration submitted in this case,
14
   Eaton did not attempt to explain his or Folger's deposition testimony, or otherwise show that Pinchev
15
   or Folger did not have any operational responsibilities for OOO Acronis within the global family of
16
   Acronis companies.  Given the broad testimony, and absence of any attempt by OOO Acronis to limit,
17
   narrow or clarify that broad testimony, the Court finds Symantec's argument persuasive.  Pinchev's and
18
   Folger's duties – as described by Eaton and Folger – support a finding that these individuals are "so
19
   integrated" with all of the Acronis entities in light of their significant roles "globally," that they would
20
   know what to do with service of summons on OOO Acronis.  The mere assertion that *formally* Pinchev
21
   and Folger are not "employees, officers or directors" or OOO Acronis is not sufficient to rebut
22
   Symantec's evidence, especially in light of the Ninth Circuit's admonition that Rule 4 be applied
23
   liberally.[14]  The Court finds that service on Pinchev and Folger was sufficient under Rule 4.
24

25
_____
26      [14]  A "legal structure" chart for the Acronis global companies is attached as Exhibit 8 to the
   Cassidy Declaration.  The chart shows Acronis, Inc. – which employed Pinchev and Folger – on the
27  same "level" as OOO Acronis and Acronis GmbH (although Acronis GmbH is under a different parent
   company within the legal structure).  The testimony that Pinchev and Folger – although employed by
28  Acronis, Inc. – were responsible for finances and sales at GmbH and other global companies at this same
   level on the chart reinforces the Court's conclusion.

**United States District Court**
For the Northern District of California

1    OOO Acronis also argues that Symantec, to the extent it attempted to effectuate service abroad,

2    was required to serve process under the Hague convention.  Oppo. at 9-10.  However, as the Court has

3    found that Symantec effectuated service domestically by personally serving Pinchev and Folger (*see*

4    ECF Nos. 29,30), the Hague Convention does not apply.

5

6                                         **CONCLUSION**

7           For the foregoing reasons and for good cause shown, the Court hereby GRANTS plaintiff's

8    motion to declare service on OOO Acronis effective and that personal jurisdiction exists over OOO

9    Acronis, and DENIES defendant's cross-motion to dismiss for lack of personal jurisdiction and

10   insufficient service of process.

11

12          **IT IS SO ORDERED.**

13

14   Dated: February 7, 2013

15                                                     _____
                                                       SUSAN ILLSTON
16                                                     UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

12