United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SYMANTEC CORPORATION,

Plaintiff,

v.

ACRONIS, INC., et al.,

Defendants.

Case No. 12-cv-05331-JST

**CORRECTED AND REVISED ORDER CONSTRUING TERMS OF UNITED STATES PATENT NOS. 7,024,527, 7,366,859, 7,454,592, 7,680,957, 7,831,789, 7,941,459 AND 7,996,708**

Re: ECF Nos. 115 & 117.

On November 5, 2013, after providing a tentative construction order to the parties, the Court held a hearing for the purpose of construing disputed terms in the claims of United States Patent Nos. 7,024,527, 7,366,859, 7,454,592, 7,680,957, 7,831,789, 7,941,459 and 7,996,708. Now, after consideration of the arguments and evidence presented by the parties, and the relevant portions of the record, the Court construes the terms as set forth below.[1]

# I. BACKGROUND

## A. Procedural History

Plaintiff-Counterclaim Defendant Symantec Corporation ("Symantec") filed this complaint for patent infringement in October 2012, accusing Defendants-Counterclaimants Acronis, Inc., Acronis International GMBH and OOO Acronis (collectively, "Acronis") of infringing Symantec's U.S. Patents Nos. U.S. Patents Nos. 7,941,459 ("the '459 Patent"), 7,024,527 ("the '527 Patent"), 7,454,592 ("the '592 Patent"), 7,680,957 ("the '957 patent"), and 7,996,708 ("the '708 patent"). Complaint for Patent Infringement ¶ 1, ECF No. 1. Acronis International GmbH

[1] The Court issued a claim construction order on November 23, 2013, and then issued a corrected version to correct a typographical error identified by the parties. See ECF Nos. 167-68. The Court also granted the parties' later stipulated request to amend the Court's construction of the "catalog" term to remove a reference to "reassembling" data. See Part III-B-2, n. 2, *infra*.

has counterclaimed to accuse Symantec of infringing its U.S. Patents Nos. 7,366,859 ("the '859 Patent") and 7,831,789 ("the '789 Patent") (collectively, "the Acronis Patents"). Amended Counterclaims ¶ 1, ECF No. 56.

The parties identified nine terms whose construction is "likely to be most significant to resolving the parties' dispute," pursuant to Patent Local Rule 4-2(b). Patent L.R. 4-3 Joint Claim Construction and Prehearing Statement 8:7-18, ECF No. 113. As a matter of case management and pretrial procedure, it is well established that district courts have the authority only to construe those terms they deem likely to lead to a dispositive outcome at any one claim construction hearing. See, e.g., Microstrategy Inc. v. Bus. Objects Americas, 410 F. Supp. 2d 348, 355 (D. Del. 2006) aff'd, 238 F. App'x 605 (Fed. Cir. 2007) (construing only two claims of the several the parties had submitted for construction). The Federal Circuit even permits district courts to limit the claims parties assert in any given action, provided that a patentee is not permanently deprived of the opportunity to later re-assert claims that present unique issues as to liability or damages. See In re Katz Interactive Call Processing Patent Litigation, 639 F.3d 1303, 1310 (Fed. Cir. 2011); Stamps.com, Inc. v. Endicia, Inc., 437 Fed. Appx. 897, 902-03 (Fed. Cir. 2011) (unpublished).

The Court proceeds to construe only the nine terms identified in the parties' joint claim construction statement, since the parties believe construction of such terms those most significant to resolving the parties' dispute. The Court will revisit the other disputed claim terms only if these constructions do not lead to a dispositive outcome, and even then, the Court may require the parties to demonstrate that the claims with unconstrued terms pose unique issues of liability or damages, and that it is necessary to avoid submitting the dispute over their scope to a jury. See Katz, 639 F.3d at 1312-13.

**B. Legal Standard**

The construction of terms found in patent claims is a question of law to be determined by the Court. Markman v. Westview Instruments, Inc., 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996). "[T]he interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim." Phillips v. AWH Corp., 415 F.3d 1303, 1316 (Fed. Cir. 2005) (quoting

Renishaw PLC v. Marposs Societa' per Azioni, 158 F.3d 1243, 1250 (Fed. Cir. 1998)). Consequently, courts construe claims in the manner that "most naturally aligns with the patent's description of the invention." Id.

The first step in claim construction is to look to the language of the claims themselves. "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" Phillips, 415 F.3d at 1312 (quoting Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111, 1115 (Fed. Cir. 2004)). A disputed claim term should be construed in light of its "ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." Phillips, 415 F.3d at 1312. In some cases, the ordinary meaning of a disputed term to a person of skill in the art is readily apparent, and claim construction involves "little more than the application of the widely accepted meaning of commonly understood words." Id., at 1314. Claim construction may deviate from the ordinary and customary meaning of a disputed term only if (1) a patentee sets out a definition and acts as his own lexicographer, or (2) the patentee disavows the full scope of a claim term either in the specification or during prosecution. Thorner v. Sony Computer Entm't Am. LLC, 669 F.3d 1362, 1365 (Fed. Cir. 2012).

Ordinary and customary meaning is not the same as a dictionary definition. "Properly viewed, the 'ordinary meaning' of a claim term is its meaning to the ordinary artisan after reading the entire patent. Yet heavy reliance on the dictionary divorced from the intrinsic evidence risks transforming the meaning of the claim term to the artisan into the meaning of the term in the abstract, out of its particular context, which is the specification." Id. at 1321. Typically, the specification "is the single best guide to the meaning of a disputed term." Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996). It is therefore "entirely appropriate for a court, when conducting claim construction, to rely heavily on the written description for guidance as to the meaning of claims." Phillips, 415 F.3d at 1315. However, while the specification may describe a preferred embodiment, the claims are not necessarily limited only to that embodiment. Id.

United States District Court
Northern District of California

Finally, courts may consider extrinsic evidence in construing claims, such as "expert and inventor testimony, dictionaries, and learned treatises." Markman, 52 F.3d at 980. Expert testimony may be useful to "provide background on the technology at issue, to explain how an invention works, to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field." Phillips, 415 F.3d at 1318. However, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." Id. If intrinsic evidence mandates the definition of a term that is at odds with extrinsic evidence, courts must defer to the definition supplied by the former. Id.

**C. Jurisdiction**

Since this is an action "relating to patents," the Court has jurisdiction pursuant to U.S.C. § 1338(a).

## III. ANALYSIS

### A. Patent Numbers 7,366,859 and 7,831,789 (The Acronis Patents)

Acronis asserts claims in two U.S. Patents: Nos. 7,366,859 (the "'859 Patent" and 7,831,789 (the "'789 Patent"), the latter of which is a continuation-in-part of the former. The patents related to a method and/or system for fast incremental backup of a data storage device. The parties have identified three disputed terms in these patents as most significant to resolving the parties' dispute.

#### 1. "Bitmap" (claims 1 & 20 of the '859 Patent and claim 28 of the '789 Patent)

| Disputed Claim Term | Acronis's Proposed Construction | Symantec's Proposed Construction |
|---|---|---|
| Bitmap | An array with elements represented by one or more bits of information. | An array with elements having one of two possible states. |

The parties agree that a "bitmap" is an array of elements, and that the patented technology employs a bitmap to determine which information needs to be backed up. But the parties dispute

whether the term "bitmap," as it is used in the patents, describes an array in which the units of which have only two possible states. Symantec argues that the limitation it proposes in its construction is appropriate because claims and specifications in the Patent refer to the bitmap's elements as either being marked for backup or as not being marked for backup.

The specifications indicate that the bitmap's elements represent that a unit is either marked or unmarked for backup. '789 Patent, 8:56-58 & '859 Patent, 7:26-27. But in the '859 Patent's embodiment, the bitmap's elements are disclosed to have a broader scope: "for example, this can be a bitmap of data blocks that are subject to archiving, or a bitmap of used data blocks of the hard disk drive (i.e., blocks of the hard disk drive that contain useful data, rather than 'empty' blocks, or free blocks)." 3:21-24. While the embodiment goes on to describe a bitmap that signals only whether or not certain logical structures correspond, 3:28-23, the embodiment nowhere clearly indicates that the bitmap in the invention only contains elements that represent only two states.

Given the lack of clear intrinsic evidence indicating that the term "bitmap" is limited in the Acronis Patents to being an array that displays one or two states, the extrinsic evidence here is dispositive. "Courts may rely on dictionary definitions when construing claim terms, so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents." 3M Innovative Properties v. Tredegar Corp., 725 F.3d 1315, 1321 (Fed. Cir. 2013); cf. Phillips, 415 F.3d at 1321 (dictionary definition risky when divorced from intrinsic evidence of term within the context of the specification). Acronis submits, and Symantec does not dispute, that dictionary definitions refer to bitmaps as representing "a set of bits," or a "collection of bits." See Authoritative Dictionary of IEEE Standards Terms at 104; Microsoft Computer Dictionary at 61. An ordinary artisan skilled in the art would not understand 'bitmap' to be limited to arrays whose elements have only one of two states.

The Court adopts Acronis's proposed construction.

**2. "Descriptors" (Claims 1 and 20 of the '859 Patent, Claim 28 of the '789 Patent)**

| Disputed Claim Term | Acronis's Proposed | Symantec's Proposed Construction |
|---|---|---|

United States District Court
Northern District of California

| | Construction | |
|---|---|---|
| "Descriptors of Logical Storage Units" (Claim 1 of the '859 Patent") | Plain and ordinary meaning | Metadata corresponding to the logical storage units |
| "Descriptors Corresponding to the Logical Storage Units" (Claim 20 of the '859 Patent) | Plain and ordinary meaning | Metadata corresponding to the logical storage units |
| "Descriptors of the Files" (Claim 28 of the '789 Patent) | Plain and ordinary meaning | Metadata corresponding to the files |

The inventions in the Acronis Patents use the "descriptors" as part of the process determining what information has already been backed up. The parties dispute whether the descriptors in the Acronis Patents are comprised only of metadata.

The Court will consider a party's argument that a term should be interpreted in accord with its plain and ordinary meaning, and needs no further construction. However, the Court cannot simply decline to construe even an ordinary term if by doing so it fails to resolve the parties' "actual dispute regarding the proper scope of these claims." O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd., 521 F.3d 1351, 1360 (Fed. Cir. 2008) (citing Markman, 52 F.3d at 976)). Therefore, whenever the Court agrees with a party that a term needs no further construction, the Court is holding as a matter of law that the limitations proposed by the other party do not inhere in the term, and that party will not be permitted to represent to a jury that such a limitation exits. The corollary is that when the Court rejects a "plain and ordinary meaning" construction, it is not necessarily stating that the term is unusually technical, but is concluding that the competing construction more properly depicts the claim scope, which the Court must construe as a matter of law.

Nothing in the Acronis Patents specifically limits the descriptors to metadata, and the specification seems to explicitly recognize that they are not so limited: "[t]he descriptors can be, e.g., MFT entries, hash function values, timestamps, checksums, and file metadata." '859 Patent, 3:17-19. However, Symantec argues that the patentee disclaimed any broader scope of the term during the prosecution of the '859 Patent. Specifically, on December 10, 2007, the applicant proposed to amend the claims to add the words "hash function values of" before the word "the

descriptors" in Claims 1(d) and 21(d) of the '859 Patent. Amendment and Reply Under 37 C.F.R. § 1.111 at 3, 6, Exh. C to Declaration of Eric E. Wall, ECF No. 119-4. The applicant described these amendments to the Patent Office as responding to the Patent Office's rejection of the claims based on prior art in "Cane," U.S. Patent No. 5,765,173. The applicant wrote:

> The independent claims now recite that the *hashing is done of the descriptors, i.e., of the metadata* associated with data stored on the disk (in the blogs, or in the files). This is clearly different than what is described in Cane (or what is known in the art with regards to using hash functions to determine identity of two data files or data blocks). Cane discusses the use of hashes in column 4, lines 1-6 (as well as simpler mathematical constructs, such as checksums or cyclic redundancy checks, which, for purposes of this discussion, can be viewed as relatively simple hash functions, and all of them belong to a class of mathematical transformations known as "one way functions*"). In Cane et al., (and, as is known conventionally), the data of the file itself is hashed* (or alternatively, the data of the block itself). The hashes can then be compared, to check for identity.
>
> *In the present claims, it is not the data that is hashed, but the descriptors - in other words, the metadata. This is clearly different than what is disclosed in Cane.* Reconsideration is therefore respectfully requested based on this patentable distinction.

Id. at 9 (emphases added).

The Court recognizes that "for prosecution disclaimer to attach, our precedent requires that the alleged disavowing actions or statements made during prosecution be both clear and unmistakable." TecSec, Inc. v. Int'l Bus. Machines Corp., ___ F.3d ___, No. 2012-1415, 2013 WL 5452049, at *8 (Fed. Cir. Oct. 2, 2013) (quoting Omega Eng'g, Inc. v. Raytek Corp., 334 F.3d 1314, 1325-26 (Fed.Cir.2003)). Here, that bar has been met. The prosecution history reflects a clear and unmistakable disavowal of the claim scope Acronis now urges this Court to adopt. The Court does not agree with Acronis that the "patentee did not argue that the term 'descriptors' as used in the patent was narrow or distinguished from prior art descriptors." Acronis Resp. Br. 9:11-13. The amendments were described as doing exactly that. "Metadata" is not used as a mere "example"; the applicant specifically distinguished the invention from prior art by stating that the patented process hashed metadata as opposed to data. The fact that "[t]he list of specific descriptors was not at issue" is a *non sequitur*. Id. 9:13. What was at issue was the process claimed in Claims 1 and 20, and the issue was resolved in favor of a limiting amendment that

excluded the hashing of non-metadata. "[T]he prosecution history may be given substantial weight in construing a term where that term was added by amendment." Bd. of Regents of the Univ. of Texas Sys. v. BENQ Am. Corp., 533 F.3d 1362, 1369 (Fed. Cir. 2008).

Not all aspects of the Patents reflect the thrust of the December 2007 amendment. The applicant did not remove or amend the portion of the specification that still states that "[t]he descriptors can be, e.g., MFT entries, hash function values, timestamps, checksums, and file metadata." '859 Patent, 3:17-19. But "an invention is construed not only in the light of the claims, but also with reference to the file wrapper or prosecution history in the Patent Office." Phillips, 415 F.3d at 1317 (quoting Graham v. John Deere Co., 383 U.S. 1, 33 (1966). Moreover, the structure of the claim terms makes clear that the list described at 3:17-19 cannot be a list of all information that actually comprises the descriptors. For example, the descriptors cannot themselves be "hash function values" or else Claims 1 and 20 would be redundantly written. Claim 1(d) would, on that reading, recite a method for "comparing hash function values of the [hash function values] of already archived logical storage units."

The Court adopts Symantec's proposed constructions.

**3. "Hash Function Values" (claims 1 & 20 of the '859 Patent) / "Control Sum Values" (claim 28 of the '789 Patent)**

| Disputed Claim Term | Acronis' Proposed Construction | Symantec's Proposed Construction |
|---|---|---|
| "Hash Function Values" (claims 1 and 20 of the '789 Patent) | Value generated by a hash function | Shorter values of a fixed length that represent the original string and are generated form a hash function algorithm |
| "Control Sum Values" (claim 28 of the '789 Patent) | Plain and ordinary meaning | A shorter value of a fixed length that represents the original string and are generated from a hash function algorithm |

Symantec draws its definition of "hash function value" from the '859 Patent specification. 4:48-53. In context, however, that portion of the specification does not clearly indicate that the patentee was setting out a special definition and acting as his or her own lexicographer. Thorner,

669 F.3d 1365. The passage is part of a larger, more general description of how hashing works. ‘859 Patent, 4:42-58.

The parties dispute whether hash function values are always shorter than the “original string.” The specification does state that “content is converted into a short bit string—a hash value,” (‘859 Patent), and also states that one of the advantages of the hash value comparison is that “the value of the hash of the data is much less in size than the data itself.” 4:51-53, 5:23-27. But it also goes on to say ’859 patent specification states that a hash function is a “*usually* shorter value of a fixed length.” 4:49-50 (emphasis added). Adopting Symantec’s proposed construction would therefore impose a limitation that the specification does not clearly encompass.

Symantec makes a similar argument that “control sum value” is similarly limited to representing only shorter values, which the Court rejects for similar reasons. Symantec also argues that during prosecution the patentee stated that “control sum value” was coterminous with “hash function value.” Since the Court does not agree with Symantec’s construction of “hash function value,” however, this does not affect the construction.

The Court adopts Acronis’s proposed constructions.

**B. U.S. Patent No. 7,941,459**

Symantec asserts eleven claims in the ‘459 Patent, which relates to the conversion of data from different storage formats. The parties agree that two terms in the Patent are most significant to resolving the dispute.

**1. “Archival Format” (Claims 1 and 3)**

| Disputed Claim Term | Symantec’s Proposed Construction | Acronis’s Proposed Construction |
| --- | --- | --- |
| “Archival format” (Claims 1 and 3) | Non-single instance self-contained format for long-term storage using specialized software | (Conceded.) |

Acronis initially proposed a competing construction of this term, but now states that “Acronis does not necessarily agree with Symantec’s construction, but . . . is willing to agree to Symantec’s construction since the dispute does not matter to infringement or invalidity and streamlines the issues the Court is required to resolve.” Acronis Responsive Claim Construction

Brief 24:20-23, ECF No. 25. The Court understands Acronis's position, but notes that "archival format" was identified by both parties as among the nine terms most significant to a dispositive outcome in this case.

In any case, the Court agrees with Symantec that the specification contrasts "archival format" from single-instance storage, and makes clear that the archival format is self-contained. '459 Patent, at 1:58-2:16. The extrinsic evidence additionally makes clear that one skilled in the art would understand an "archival format" to use specialized software, which is consistent with the intrinsic record. See Wiley Elec. & Elecs. Eng'g Dictionary, John Wiley and Sons, Inc., p. 35 (2004); McGraw Hill Dictionary of Scientific and Technical Terms, 6th Ed., p. 132 (2003).

The Court adopts Symantec's proposed construction.

**2. "Catalog" '459 (Claims 1 and 3)**

| Disputed Claim Term | Symantec's Proposed Construction | Acronis's Proposed Construction |
|---|---|---|
| "Catalog" (Claims 1 and 3) | software that accesses a data structure and that requests, receives, and reassembles data stored in a single-instance data storage pool | An array identifying data objects and pointing to the location of those data objects and software that accesses the array and that requests, receives, and reassembles the identified data objects |

The parties agree that the Patent adopts a specialized definition of this term but disagree about whether that definition its. Initially, the parties appeared to dispute whether the catalog was merely passive or whether it performed the proactive functions of accessing, and of requesting, receiving and reassembling data.[2] Now, after Acronis has proposed the underlined amendment to its initial construction, it appears that the parties' dispute is over (1) whether the catalog includes a structure that contains information about the data objects and their location, and (2) whether the

[2] Both parties submitted constructions that referred to "reassembling" data. However, after the Court issued its claim construction order, the parties filed a stipulated request that the Court remove the reference to "reassembling" data from its construction. ECF No. 175. The Court granted the request, and the Court's construction at Part IV, *infra*, adopts a version of Symantec's proposed construction that does not include the word "reassembles."

catalog also contains, in addition to that structure, software that accesses that structure.[3]

Acronis's proposed construction may describe the way the catalog functions in Figure 3, which depicts the preferred embodiment. But Acronis has not demonstrated that the claims are necessarily limited to the embodiment. See Thorner, 669 F.3d at 1366 (it is "not enough that the only embodiments, or all of the embodiments, contain a particular limitation").

The Court recognizes that, when a patent adopts an idiosyncratic definition, the fact that the specification "consistently uses the term" in a particular manner is strong evidence of its meaning. Netcraft Corp. v. eBay, Inc., 549 F.3d 1394, 1399 (Fed. Cir. 2008); see also Hologic, Inc. v. SenoRx, Inc., 639 F.3d 1329, 1338 (Fed. Cir. 2011) (deferring to what the specification "specifically and exclusively shows," "because that is clearly what the inventors . . . conceived of").

Despite this, Acronis's argument is weakened by the fact that the specification takes several affirmative steps to clarify the limited nature of the specification, rendering it somewhat unlikely that the patentee implicitly understood the term to be limited to the way it was used in the embodiments. For example, the specification discloses specifically that drawings are "not intended to limit the invention to the particular form disclosed." 3:23-25.

While the specific embodiments may use the term in the way that Acronis suggests, the way the specification is written indicates that the inventor conceived of alternate understandings of the term's scope, and that the term itself is not necessarily limited to the embodiments. For example, the specification states that "Catalog 275 *may* identify the location of data objects," not that it *must*, or that it is inherent in the concept of the "catalog" that it necessarily does. 5:60 (emphasis added). When the specification states that "the catalog includes a plurality of entries, each entry identifying a data object and including an associate set of data object attributes," it is

[3] Acronis proposed the underlined amendment to its construction in response to Symantec's opening brief. And then, at oral argument, in response to this Court's tentative construction, Acronis proposed yet another new construction that Symantec had not previously seen, which removed the term "array" and the requirement that the catalog "point" to the location of data objects. The Court would ordinarily grant Symantec an opportunity to respond to this new construction, but finds it unnecessary to do here since it will adopt Symantec's construction as superior to any iteration of Acronis's constructions.

within a passage that is describing "one embodiment." 2:37, 40-43. This language is explicitly nonexhaustive, and indicates that the term "catalog" is not necessarily limited as Acronis suggests, even if the disclosed embodiments use it only in the manner it describes. In other words, the patent does not "consistently use" the *term* the way it is used in Acronis's construction. Cf. Netcraft, 549 F.3d at 1399. It is far from clear that Acronis's language is "what the inventors . . . conceived of" when they used the term "catalog." Hologic, 639 F.3d at 1338.

In contrast to Acronis's construction, Symantec's proposed construction encompasses the functions performed in the claim language in a straightforward manner. 8:33-50, 9:43-45. The Court adopts Symantec's proposed construction.

**C. U.S. Patent No. 7,454,592**

Symantec asserts claims 17-25 of the '592 Patent, which also relates to single-instance storage, and is directed to methods for identifying and appropriately storing duplicate data. The parties have identified the term "lookup table," in claim 17, as significant to resolving the dispute.

| Disputed Claim Term | Symantec's Proposed Construction | Acronis's Proposed Construction |
|---|---|---|
| "Lookup table" (Claim 17) | a table that associates different types of data and permits one type of data to be located by reference to the other | a table that associates different types of data and identifies one type of data by reference to another |

The parties' differences are not obvious from the face of their competing constructions, but through those constructions the parties seek to encompass very different claim scopes.

In Acronis's original construction, it proposed that the table "uses" one type of data to locate another. Symantec argued, and the Court agrees, that this word implied that the lookup table itself performs an active function. In Acronis's brief, and at the hearing, Acronis clarified that it does not argue that the lookup table is active. What Acronis argues is that the lookup table itself contains the two types of data it associates, and a user does not need to refer to any other extrinsic sources to make that association. To that end, Acronis has proposed the construction above, which eliminates the word "use," and is intended to capture the concept that the lookup

table indexes data as a table does in a reference book: one type of data in one column, corresponding data in the adjoining column, with both pieces of data provided directly to the user and their association evident on the face of the page.

To discourage positional bargaining with the Court, and to avoid giving one party more "bites at the apple" than the other, the Court does not ordinarily permit parties to propose new constructions in response to a tentative order. In this case, however, Acronis's new construction, beyond conceding to Symantec's criticism of the word "uses," does not change the nature of the parties' dispute. At the hearing, as in its briefs, Symantec has made clear that it disputes whether the claimed lookup table is limited to being the sort of feature described above. The new construction is merely another iteration of the parties' original dispute, and Symantec is not prejudiced by Acronis' new proposal.

Figures 4 and 5 of the Patent disclose a lookup table that functions in essentially the manner that Acronis suggests. In the first column, one type of data appears (either a logical address or a hash value) and it is is aligned with corresponding data (either a hash value or a physical address) in the next column. A user would use the tables disclosed in the specification by looking at the data in one column, and identifying the data in the adjoining column. The written description also reflects this arrangement.

Symantec suggests that a feature could qualify as a "lookup table" without presenting associated sets of data directly to the user. Symantec proposes that a lookup table need only "permit" data to be located with reference to each other. By that construction, the Court understands Symantec to argue that a feature could qualify as a "lookup table" even if it does not align sets of data in an immediately accessible way, but instead merely contains within it the data that could *permit* a user to do its own locating. It also seems to endorse a claim scope that would encompass a feature that associates sets of data only by sending a user through a multiple-step process or by accessing extrinsic sources of information.

The specification, which is "the single best guide to the meaning of a disputed term," Vitronics, 90 F.3d at 1582, does not reflect this claim scope. To resolve the parties' dispute over claim scope, the Court adopts Acronis's proposed construction.

**D. U.S. Patent No. 7,024,527**

Symantec asserts claims 20, 21 and 24 of the '527 Patent, which discloses a system for restoring data while applications are running and accessing data. The parties dispute two terms in the patent, and agree that both are among the nine most significant to resolving the parties' dispute.

**1. "Application" (Claims 20 & 24)**

| Disputed Claim Term | Symantec's Proposed Construction | Acronis's Proposed Construction |
|---|---|---|
| "Application" (Claims 20 & 24) | Plain and ordinary meaning | A program running on top of operating software |

The Court appreciates Symantec's argument that "Acronis's construction does not clarify the meaning of 'application.'" Symantec Opening Br. 5:1-2. But, as discussed *infra*, the Court must construe even everyday terms where necessary to resolve the parties' dispute over claim scope, O2 Micro, 521 F.3d at 1360, and the term here is in some sense technical.

The parties' dispute is whether the "application" is limited to being one that is running on top of operating software.[4]

The Court does not necessarily agree with Symantec that Acronis's construction is *inconsistent* with the specification. Symantec claims that the "specification describes applications, including 'restore application[s],' which may run in a pre-boot environment." Symantec Opening Br. 5:8-9 (citing '527 Patent, 1:52-54; 4:14-26), but those portions of the specification do not seem to include any reference to whether or not the applications run in a pre-boot environment.

Nonetheless, the intrinsic record does not reflect the limitation Acronis proposes. Acronis

[4] Acronis amended its original construction in its response brief to no longer specify that the program must be a "user-space" program. And then, at oral argument, in response to this Court's tentative construction, Acronis proposed yet another new construction that Symantec had not previously seen: "a program running above an operating system, distinct from the file server, and which may include driver software." As discussed *supra*, the Court would ordinarily grant Symantec an opportunity to respond to this new construction, but finds it unnecessary to do so here since it will adopt Symantec's construction.

states that "when the claim refers to 'an application,' it is referring to a program the user is running, like a word processor or an email client, which needs access to part of the backup data," and that "[t]hese types of programs run on top of operating system software." Acronis Resp. Br. 7:11-14. But it fails to point to portions of the intrinsic record that demonstrate that this is the case. At oral argument, Acronis's counsel could point to no portion of the intrinsic record that reflects this limitation, and instead argued that the limitation inheres in the term itself. Whatever the extrinsic evidence would suggest about the normal use of this term, this suggests that there is no evidence that the Patent itself uses the term in the way that Acronis suggests. And both parties have submitted competing extrinsic evidence about the way the term "application," outside of the context of the patent, would be understood by a person of ordinary skill in the art. The Court cannot conclude on the basis of this that Acronis's proposed construction is required, especially where the intrinsic evidence fails to support the construction.[5]

The intrinsic record fails to reflect the limitation Acronis proposes. The Court adopts Symantec's proposed construction.

**2. "File Server" (Claims 20 & 24)**

| Disputed Claim Term | Symantec's Proposed Construction | Acronis's Proposed Construction |
|---|---|---|
| File server | Computing system that handles requests for files | In a client-server networked environment, a computer system that manages access to files by one or more client computer systems |

The parties dispute two limitations proposed by Acronis: whether the claimed "file server" (1) must exist within a client-server networked environment, and (2) whether it must manage access from "one or more client computer systems."[6]

[5] Acronis also argued at the hearing that the Court should clarify that the claimed "file server" cannot qualify as an "application," since, for example, claim 20 refers to the filer server "directing" the "restore application." 12:53. The Court agrees that that is a logical conclusion, and does not understand Symantec to dispute it. But even so, that does not demonstrate that Acronis's construction is correct or that the parties have a dispute over claim scope that the Court must resolve as a matter of law.

[6] The parties' constructions also differ in that one refers to the file server "hand[ling] request for files," and the other refers to the file server as "manag[ing] access to the files," but from the briefs

United States District Court
Northern District of California

The specification states that "embodiments may also be implemented in non-networked storage environments." '527 Patent 4:11-13. But the fact that the embodiments as a whole may be implemented in a non-networked environment does not mean that the "file server" must. And the specification indicates that it does not. Figure 1 shows the file server connected to a "network." 2:65-67, Fig. 1. The specification also distinguishes the "file server" from a "file system" on a specific computer. 4:14-26. Unlike the "application" term construed *supra*, Acronis has pointed to significant evidence in the intrinsic evidence suggesting that its construction is correct.

The fact that the embodiments are consistent with a proposed construction does not prove that the construction is correct. But given the strong suggestion of the embodiments, the extrinsic record here is dispositive. Acronis submits, and Symantec does not dispute, that a "file server" is commonly defined to operate on a network. Authoritative Dictionary of IEEE Standard Terms, at 433. A person of ordinary skill in the art, reviewing the intrinsic record, would conclude that the claimed file server operates in a client-server networked environment.

However, Acronis has not justified its proposed limitation that the file server manage access to files "by one or more client computer systems." Acronis argues that that concept is implicit in the concept of a network, but it does not provide any intrinsic (or even extrinsic) evidence that reflects this specific limitation. In fact, in Figure 1, no client computers are disclosed. That may be because Figure 1 is only showing the backup aspects of the network, without showing the client computers being backed up, but regardless, the intrinsic record does not compel Acronis's construction.

Moreover, the syntax of the construction is unclear because of the ambiguous use of the preposition "by." The construction could be read to suggest that the computer system manages access to the files *of* one or more client computer systems, but it also could be read to suggest that the computer system manages access to files *through the use of* one or more client computer systems. This is an unacceptable level of ambiguity for a lay jury to apply.

---

and from the hearing it does not appear that the parties believe this distinction to be important.

United States District Court
Northern District of California

The Court adopts a construction the reflects one but not both of Acronis's proposed limitations: "In a client-server networked environment, a computer system that manages access to files."

**E. U.S. Patent No. 7,996,708**

Finally, Symantec asserts claims 1, 7-13 and 16 of the '708 Patent, which claims inventions that facilitate the restoration of a backup created on one system to another system. The parties have identified one term in Claim 1 as most significant to resolving the parties' dispute.

| Disputed Claim Term | Symantec's Proposed Construction | Acronis's Proposed Construction |
|---|---|---|
| generating computer executable restoration instructions (Claim 1) | Plain and ordinary meaning | the claimed software writes executable code that guides the restoration process |

Symantec again argues that Acronis has proposed to construe a term that needs no construction, but the Court must resolve the parties' dispute over whether the claim's scope is limited to situations in which the claimed software, as oppose to a human, writes the code that guides the restoration process.

Acronis points out that various parts of the specification describe a process in which the software module, not a human programmer, generates the code that guides restoration. See, e.g., 11:1-17. But the specification also states that the module "may utilize . . . user input . . . to generate code for restoring." 11:1-3. As applied by a jury, Acronis's construction would apparently rule out this aspect of the disclosed embodiment, and so it is very unlikely be correct. Moreover, the construction is circular and potentially confusing. By using the unclear term "claimed software" within the construction itself, the construction does not function as a clarification of the disputed term.

The Court adopts Symantec's proposed construction.

//

//

//

United States District Court
Northern District of California

**IV. CONCLUSION**

For the foregoing reasons, the Court construes the disputed claim language as follows:

| Claim | Term | Construction |
|---|---|---|
| **'859 Patent** | | |
| 1 | Bitmap | An array with elements represented by one or more bits of information. |
| 1 | Descriptors of the Logical Storage Units | Metadata corresponding to the logical storage units |
| 1 | Hash Function Values | Value generated by a hash function |
| 20 | Bitmap | An array with elements represented by one or more bits of information. |
| 20 | Descriptors Corresponding to the Logical Storage Units | Metadata corresponding to the logical storage units |
| 20 | Hash Function Values | Value generated by a hash function |
| **'789 Patent** | | |
| 1 | Bitmap | An array with elements represented by one or more bits of information. |
| 20 | Bitmap | An array with elements represented by one or more bits of information. |
| 28 | Descriptors of the Files | Metadata corresponding to the files |
| 28 | Control Sum Values | Plain and ordinary meaning |
| **'459 Patent** | | |
| 1 | Archival Format | Non-single instance self-contained format for long-term storage using specialized software |

United States District Court
Northern District of California

| | | |
|---|---|---|
| 1 | Catalog | Software that accesses a data structure and that requests and receives data stored in a single-instance data storage pool |
| 3 | Archival Format | Non-single instance self-contained format for long-term storage using specialized software |
| 3 | Catalog | Software that accesses a data structure and that requests, receives, and reassembles data stored in a single-instance data storage pool |
| **'592 Patent** | | |
| 17 | Lookup table | A table that associates different types of data and identifies one type of data by reference to another |
| **'527 Patent** | | |
| 20 | Application | Plain and ordinary meaning |
| 20 | File Server | In a client-server networked environment, a computer system that manages access to files |
| 24 | Application | Plain and ordinary meaning |
| 24 | File Server | In a client-server networked environment, a computer system that manages access to files |
| **'708 Patent** | | |
| 1 | generating computer executable restoration instructions | Plain and ordinary meaning |

**IT IS SO ORDERED.**

Dated: January 21, 2014

JON S. TIGAR
United States District Judge